The State *v.* Henry.

---

THE STATE *v.* J. H. HENRY.

GUARDIAN AND WARD. *Act of* 1875 *construed.* A guardian was appointed in 1851 and made a settlement in 1875, showing an indebtedness to the ward, who was then of age and married. Upon failure to pay, he was indicted under the act of 1875, for converting funds of the ward to his own use. *Held:* The settlement showing indebtedness was not evidence that the funds was then in his hands, nor would a failure to pay over the ascertained indebtedness be a felony. The leading element in the offense created is the wrongful convertion.

FROM SUMNER.

Appeal in error from the Circuit Court of Sumner county.   J. E. RICE, J.

M. S. ELKIN and ATTORNEY GENERAL LEA for the State.

J. J. TURNER for Henry.

FREEMAN, J., delivered the opinion of the court.

This is an indictment under the act of 1875, against a guardian for converting funds of his ward to his own use.

The act is as follows: "That any executor, administrator, guardian or trustee, holding trust funds, who shall willfully and maliciously convert to his own use and benefit any moneys, notes, stocks, bonds, or other evidences of value of whatever nature and description, the assets of the estate for which he is executor, administrator, guardian or trustee, and on final settlement shall fail to pay to those entitled to the funds thus entrusted to and due from such executor, administrator, guardian or trustee, where the same are not paid and cannot be collected by due process of law, shall be adjudged guilty of a felony before any competent court, and on conviction, shall be punished by imprisonment in the penitentiary not less than one and not more than ten years."

This indictment charges that defendant was appointed guardian of one Mary E. Richman (now Mary E. Browning), by the County Court of Sumner county, on the 3d day of November, 1851, and at that time there came into his hands and possession the sum of $2,600.72, money of his ward, Mary E. (since intermarried with T. C. Browning). That he made a final settlement on the 7th of August, 1875, (never having done so before that date), with the County Court, and was shown to be *indebted* in the sum of three thousand seven hundred and eighty-five dollars and forty-

nine cents. That on the day of said settlement and divers other days since that time, specifying dates, said Henry, willfully and maliciously converted to his own use the said aforesaid trust fund then held by him as the guardian of said Mary E. Richman, and has failed to pay over the said fund, and the same cannot be made out of him by due process of law, or his sureties, etc.

The indictment was demurred to and the demurrer sustained. The question is, was this judgment proper?

From these facts it is certain the ward had been of age several years before the alleged conversion of the fund in the hands of the guardian, taking the fact to be definitely charged, that it occurred at date of settlement, November, 1875, and after that. If an infant when appointed, she would have been twenty-one in 1871. It further appears, that she had married before the settlement, as it is averred that he was found indebted to her as Mary E. Browning on the settlement.

The question is, Was he as guardian, as such, liable to indictment under the statute for conversion of the money due him, or the amount to which he was indebted to his ward, as shown by the settlement?

It is a question on the face of the charge as to whether the statement of the indictment, fairly construed, amounts to more than a charge of conversion of an indebtedness found on the settlement against him by the County Court; for it is only averred that he willfully and maliciously did convert to his own use and benefit the aforesaid trust fund, then held by him

as the guardian of Mary E. Richman or Browning, as aforesaid, that is, by the ascertained indebtedness, as shown on the settlement. If this be the true construction of the language, (and it can hardly mean anything else), it would be certain it would not be the offense created by the statute. The fact is, conceding the indictment to be good on its face, it is very probable, if not certain, there could be no ultimate conviction, as it is hardly conceivable the guardian, who had received the money perhaps twenty years before, had retained any of it in his hands at the time of the settlement, or the passage of the act of 1875, and the conversion probably, if not certainly, took place long before the passage of the act.

But to the construction of the act itself. The party must be a guardian, having in his hands the funds, as stocks, notes, bonds, money, or other evidences of value of any kind, belonging to his ward, which he willfully and maliciously converts to his own use and benefit, and on final settlement fails to pay over, etc. What precise meaning is to be given to the words willfully and maliciously, in this connection, it is somewhat difficult to say. Waiving that, however, it is clear, giving the words their natural signification, the first mentioned elements of the offense, must consist in using for his own benefit, the funds described, in violation of his trust. For instance, if he has stocks, his duty is to receive the dividends or profits, apply them to the support of his ward, and any surplus is to be loaned out or re-invested, so as to yield interest in the future as principal. To sell

such stocks, and apply the money, willfully and maliciously, to his own use, would be a conversion as forbidden by the statute.

If a note due his ward's estate is in his hands, his duty is to collect it, when due, receive the interest as it falls due, and apply as the law · directs. Selling this note, or receiving the proceeds and applying it to his own use, as forbidden, would be a violation of the statute—the other elements being shown. In case of money in his hands, his duty is to loan it on proper security, collect the interest and use as the law directs. To fail in this, and use the money so in his hands for his own benefit willfully and maliciously, is forbidden.

In other words, the statute operated prospectively, and was intended to forbid such uses of the fund of the ward in his hands, as we have indicated. The purpose was to enforce the performance of the duties of his trust, with reference to the funds of his ward in his hands, and to convert that identical fund to his own use, instead of using it as his trust required, is the offense created and to be punished. In this view, it would be clear, that there could not be a conversion of a mere ascertained indebtedness as shown by a settlement, nor the offense created by the statute be committed by simple failure to pay such indebtedness.

But again, the object of the statute is to enforce actively the performance of the duties of this trust, by a proper use of the fund, and to restrain and prevent an improper use of it. There must be the

·duty at the time of using the fund properly, and an improper use, by converting to his own use and ben-·efit. At the time of this settlement, there was no· active duty imposed in the use of the fund—the ward had both married and was of age. It was not probably his duty, after either of these events, to invest the fund, but simply his duty to pay it over. The felony created is not the failure to pay over alone on settlement; but its leading element is such wrongful conversion as we have indicated—while the duty of keeping the fund, and realizing its proceeds is im-·posed on him, as in case of stocks, or loaning money, in case the fund be in that form. This could not be predicated of an indebtness simply to his ward, however well· ascertained, and a failure to pay it to the ward.

We think it satisfactorily appears, that the offense created by the statute is not charged in this indictment, and affirm the judgment.